## Commonwealth v. Wisneski

*Paul R. Michel,* for Commonwealth.
*David N. Savitt,* for defendant.

SPAETH, J., March 18, 1968.—Defendant has filed two petitions for pretrial discovery, one for "permission . . . to inspect and copy the report of the Fire Marshal of Philadelphia County", and the second for "permission . . . to inspect and copy any written statements of defendant as well as the reports of any oral statements of defendant".

On March 1, 1967, a fire occurred at defendant's premises at 3048 Germantown Avenue, Philadelphia. Section 6 of the Act of June 8, 1911, P. L. 705, 53 PS §14526 (1957), provides:

"The Fire Marshal of every city of the first class of this Commonwealth shall make, or cause to be made, an investigation of the cause, origin, and circumstances of every fire occurring in such city, by which

property has been destroyed or damaged, and shall especially make investigation as to whether such fire was the result of carelessness or design. Such investigations shall be begun immediately after the occurrence of such fire, and the Fire Marshal shall have the right to supervise and direct such investigation whenever he deems it expedient or necessary. The officer making investigation of fire shall forthwith notify said Fire Marshal, and shall within one week of the occurrence of fire furnish to the said Fire Marshal a written statement of all facts relating to the cause and origin of the fire, and such other information as may be called for,—the blanks provided by said Fire Marshal. The said Fire Marshal shall keep in his office a record of all fires occurring, together with all facts, statistics, and circumstances, including the origin of the fires, which may be determined by investigations provided by this act; such records shall at all times be open to the public inspection".

In accordance with this section, the fire marshal investigated the fire at defendant's premises, and, presumably, prepared a report. On page 5 of the Commonwealth's brief, it is said that "Defendant made an oral statement to an Assistant Fire Marshal but no verbatim record of the statement was made. Later, the investigator wrote down his recollection of what defendant had said. Nothing was signed by defendant".

On June 29, 1967, defendant was arrested and was charged with arson of a dwelling house and with burning to defraud an insurer. The petitions presently before the court have been filed in advance of defendant's trial on those charges.

In resisting defendant's petitions, the Commonwealth relies upon Pennsylvania Rule of Criminal Procedure 310.

Defendant's petition for permission to inspect and copy the fire marshal's report should be denied, says the Commonwealth, because Rule 310 provides, in part:

"The court may order the attorney for the Commonwealth to permit the defendant or his attorney . . . to inspect and copy . . . any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons . . . In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth".

Here, defendant has neither proved nor offered to prove exceptional circumstances and compelling reasons.

The difficulty with the Commonwealth's reliance on Rule 310 is that the rule applies only to discovery or inspection of material in the possession of the Commonwealth. This is expressly stated in the last sentence of the rule ("written statements of witnesses in the possession of the Commonwealth") ; and it is necessarily implied in the earlier sentence that refers to written statements by defendant, for there it is said that "The court may order the attorney for the Commonwealth to permit" inspection of the statements. Here, however, the fire marshal's report is not, or should not be, in the possession of the Commonwealth but of the fire marshal, for, as has been mentioned, section 6 of the Act of June 8, 1911, supra, requires that the fire marshal "shall keep in his office a record of all fires occurring, together with all facts, statistics, and circumstances, including the origin of the fires, which may be determined by investigations provided by this act; such records shall at all times be open to the public inspection".

Counsel have argued as though section 6 of the Act of June 8, 1911, and rule 310 were in conflict, the question being whether one is to prevail over the other. In fact, however, they are not in conflict but are concerned with different subjects, section 6 with certain of the fire marshal's records, which "shall at all times be open to the public inspection", and rule 310 with certain of the district attorney's records, which, except as permitted by the rule, shall be open to no one else's inspection.

The conclusion that rule 310 is inapposite as applicable only to material in the possession of the Commonwealth is confirmed by the history of the rule. In the explanatory comment to the rule, prepared by the Criminal Procedural Rules Committee, it is said in part: "This rule is adopted in light of Commonwealth v. Caplan, 411 Pa. 563, [192 A. 2d 894] (1963)". In the Caplan case, the court said, at 567, 192 A. 2d 896:

"As recently as 1955, this Court in Commonwealth v. Wable, 382 Pa. 80, 86, 114 A.2d 334, speaking through Chief Justice Stern, said: ' "*The General rule**" [the footnote states: 'Italics throughout, ours'] is that the accused has no right to the inspection or disclosure before trial of evidence in the possession of the prosecution": 2 Wharton's Criminal Evidence, 1311, 1312, 1354, (citing cases from many jurisdictions)' ".

Still further confirmation that rule 310 and section 6 of the Act of June 8, 1911, supra, are not in conflict but refer to different materials is provided by section 7 of the act, which provides that the fire marshal shall, when he considers it necessary:

"take or cause to be taken the testimony, on oath or affirmation, of all persons supposed to be cognizant of any facts [regarding the fire being investigated] . . . and if he shall be of the opinion that there is

evidence sufficient to charge any person with the crime of arson . . . he shall cause such person to be arrested . . . and shall furnish to the proper prosecuting attorney . . . a copy of all pertinent and material testimony . . ."

Had testimony been taken of defendant in accordance with this provision, a copy of the testimony would not be a record required by section 6 of the act "at all times [to] be open to the public inspection" but would instead be a record that, in accordance with section 7 of the act, would be "in the possession of the prosecution" and, hence, subject to rule 310 and to examination by defendant only as permitted by the rule.

Accordingly, the Commonwealth's objection to defendant's petition for permission to examine the fire marshal's record is not well taken, and the petition will be allowed, except, however, that the allowance will be limited to such record as the fire marshal has prepared in accordance with section 6 of the Act of June 8, 1911, supra. So far as defendant's request to be allowed to copy the record is concerned, the request will be neither granted nor denied. The requirement of section 6 that the record "shall at all times be open to the public inspection" implies that a citizen making the inspection may make a copy of what he sees. Just how this is to be done, however, may be left to the fire marshal's discretion.

With regard to defendant's second petition, for permission "to inspect and copy any written statements of defendant as well as the reports of any oral statements of defendant"; the Commonwealth resists this petition because, it says on page 3 of its brief:

"Under Rule 310 only written statements of the defendant are discoverable. Here the defendant made oral statements. After the statements were made, the

investigator wrote down his recollection of what defendant had said. Since defendant's statement was oral, not written, they are [sic] not subject to pretrial inspection".

Defendant, however, argues on pages 4-5 of his brief:

"The issue for discovery is not how the statement is recorded but whether the statement may be used by the Commonwealth at trial as an admission or to impeach the credibility of the defendant . . .

"In the instant case the Commonwealth can offer the statement as an accurate representation of what was said by the defendant . . .

"The fact that there was some paraphrasing and some direct quotes does not alter the fact that the writing purports to state what the defendant said and as such is a written statement of the defendant within the meaning of Rule 310 . . ."

It is unnecessary to resolve this issue,* for the court understands from the briefs that the only statement that defendant made was to the fire marshal's investigator. Presumably, therefore, the investigator's written account of the statement will be one of the records that defendant will be able to inspect pursuant to his first petition. Accordingly defendant's second petition will be denied. The denial, however, will be without prejudice, so that if the court has misunderstood the briefs, and there is a written report of a statement by defendant in the possession of the Commonwealth, defendant may file a petition under

---

* For a collection of cases, see 23 C.J.S. Criminal Law §955(3) (c) (1961) ; and cf. Fed. R. Crim. P. 16, as amended February 28, 1966, which provides in paragraph (a) for inspection and copying of "written or recorded statements or confessions made by the defendant". Is a statement "recorded" when notes of it are made? Is "recorded" to be read into, or understood as implied by, the provisions of Pa. R. Crim. P. 310?

rule 310 for permission to inspect and copy the statement, in which event the issue now left open will have to be decided.

### ORDER

And now, March 18, 1968, defendant by his attorney shall be permitted to inspect the fire marshal's record of the fire that occurred on March 1, 1967, in defendant's premises at 3048 Germantown Avenue, Philadelphia, together with all facts, statistics and circumstances, including the origin of the fire, as that record may have been prepared in accordance with section 6 of the Act of June 8, 1911, P. L. 705, 53 PS §14526 (1957). Defendant's petition to be allowed to inspect and copy statements, or reports of statements, by him is denied without prejudice.

### SUPPLEMENTAL MEMORANDUM

SPAETH, J., March 27, 1968,—Following the court's memorandum and order of March 18, 1968, the assistant district attorney and counsel for defendant appeared before the court with the chief of the fire department, who had with him the department's records regarding the fire at defendant's premises.

The assistant district attorney stated that pursuant to the court's order of March 18th, he had given counsel for defendant the written account of the statement that defendant had made to one of the investigators of the fire department, and also a certain written report.

The report was prepared by representatives of the fire department on the day of the fire. It contains various particulars, such as the time and place of the fire and the men and equipment used to fight it, and concludes with a statement to the effect that in the opinion of the lieutenant who signed the report, the origin of the fire was arson and that whether this was so was under investigation. The chief of the fire de-

partment stated to the court that this sort of report, describing a fire and giving an opinion as to its origin, was prepared for each fire and was open to the public. He went on to say that in the present case, where further investigation was made, the department has other documents which contain the results of the investigation. For example, the chief said, various persons other than defendant had been interviewed, and statements had been taken from them. In cases where there is such further investigation, it is the fire department's practice not to show to the public the results, such as witnesses' statements, of the investigation.

The assistant district attorney said that he believed that the fire department's practice was proper, and that he had refused to give defense counsel the results of the further investigation because he did not understand that the court's order of March 18th required him to. To this defense counsel replied that he believed that under the Act of June 8, 1911, P. L. 705, sec. 6, 53 PS §14526 (1957), he was entitled to see not only the written account of defendant's statement and the first report of the fire and its origin, but also all documents prepared after the first report, such as the statements from the various persons who had been interviewed. After hearing argument, the court reserved its decision, which will now be stated.

The court has concluded that the position taken by the assistant district attorney is the sounder.

The critical part of the Act of June 8, 1911, supra, is this:

"The said Fire Marshal shall keep in his office a record of all fires occurring, together with all facts, statistics, and circumstances, including the origin of the fires, which may be determined by investigations provided by this act; such records shall at all times be open to the public inspection".

The question is: What does "such records" mean?

It is apparent that "such records" refers back to something already mentioned. When reference back is made, the phrase "a record of all fires occurring" is encountered. Thus, it is clear that "a record of all fires occurring" is a record that "shall at all times be open to the public inspection". The first report prepared by the lieutenant is a record of the fire, and this court's order of March 18th did require that it be shown to defendant's counsel, which, as mentioned, the assistant district attorney has done.

Defendant's counsel argues that "such records" refers not only to "a record of all fires occurring", but also to the phrase "together with all facts, statistics, and circumstances, including the origin of the fires". The phrase would include the statements that were taken after the first report, so that if defendant's counsel is right, those statements must be shown to him.

Defendant's counsel's interpretation is a possible interpretation. It overlooks, however, a distinction that the Act of June 8, 1911, supra, makes. The act requires the fire marshal to keep two files: first, "a record of all fires occurring", and second ("together with"), documents containing "all facts, statistics, and circumstances, including the origin of the fires". The question, therefore, is whether the fire marshal must permit public inspection of both files or of the first only; and the fact that the clause requiring public inspection uses the word "records" suggests that it refers to the first file only, since that file is also described as a "record", while the second file is not described as a "record" but as "facts, statistics, and circumstances".

It may be granted that this interpretation is not compelling. The second file might also be considered a "record", so that the phrase, "such records shall at all times be open to the public inspection", would ap-

ply not only to the record represented by the first file but also to the record represented by the second.

Somewhat against this view is the fact that at least in one sense the first file is more of a "record" than the second. "Record" suggests a written account of an event, which is what the first file ("a record of all fires occurring") is; "record" less easily fits the second file ("facts, statistics, and circumstances"), which may contain a written account of an event but may also contain rather speculative material, such as an expert's opinion of why a fire occurred.

Apart from this, however, there are other considerations which make it plain that the right to public inspection must be construed narrowly, and, hence, as applicable only to the first file, rather than broadly.

Thus, it might hamper the fire department in discharging its duties if the department had to make public its second file. If a witness knew, for example, that his statement to a department investigator would later become a public document, he might refuse to give a statement or, if he gave it, might hold back something. These considerations do not apply to the first file, which is a factual statement of where and when the fire occurred, and how it was fought, and, therefore, does not involve a person's right to privacy or the department's ability to enforce the fire laws.

This interpretation is consistent with the Philadelphia Home Rule Charter, which was adopted April 17, 1951. Section 3-100(d) of the charter created the fire department, which by appendix A-100 assumed the powers and duties of the fire marshal. Section 5-400(b) of the charter requires the fire department to administer and enforce statutes relating to fires, so that the fire department must now keep the records required by the Act of June 8, 1911, supra, which become department records. Section 5-1100 of the

charter defines such department records as "City records". And section 5-1104 of the charter provides:

"City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger the public safety . . . shall not be available for public inspection . . . [A]ll other City records shall be open for public inspection [but at reasonable times and places] . . ."

If defendant's counsel's reading of the Act of June 8, 1911, supra, were correct, it would be necessary to hold that the act had been repealed, as inconsistent with the charter. See section 11 of the Home Rule Act of April 21, 1949, P. L. 665, 53 PS §13111 (1957), providing that a home rule charter "shall supersede . . . all acts or parts of acts . . . affecting the organization, government and powers of [a city adopting a home rule charter] to the extent that they are inconsistent or in conflict" with the charter. This is so, because to read the act as defendant's counsel does, and thereby require, for example, that all statements, of whatever person, obtained as part of the investigation of the origin of a fire, must be open to public inspection, might "invade a person's right to privacy" or "hinder law enforcement". Defendant's counsel has argued to the contrary, but his argument cannot be accepted. The principal responsibility of investigating fires falls upon the fire department. Thus, the department's file may constitute all or most of the district attorney's file, and Pa. R. Crim. P. 310, and cases such as Commonwealth v. Caplan, 411 Pa. 563, 192 A. 2d 894 (1963), which generally preclude inspection of the district attorney's file, show that the inspection must be considered a hindrance of law enforcement. However, so drastic a result as an implied repeal is not necessary, since, as has been seen, the act may be read as consistent with the charter.

It follows that the assistant district attorney and the fire department, in disclosing to defendant's counsel the fire department's first file, containing a record of the fire, complied with section 6 of the Act of June 8, 1911, supra, and with this court's order of March 18, 1968. They will not be required to disclose the department's second file, containing investigatory material compiled after the first file was prepared.